IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

vs.                                            CIVIL ACTION NO.        3:00-0647
                                                CRIMINAL ACTION NO.    3:98-00047-01

KELVIN ANDRE SPOTTS, a/k/a Shorty

**MEMORANDUM OPINION AND ORDER**

Pending before the Court are Defendant Kelvin Andre Spotts' seven motions requesting relief under the First Step Act. ECF Nos. 1451, 1452, 1456, 1461, 1472, 1473, 1476, 1479. For the purposes of this analysis, the Court will construe the first of these motions—styled a "Motion Requesting Immediate Release From Federal Prison"—as a Motion for Reduction of Sentence under the First Step Act. ECF No. 1451. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion. Defendant's successive motions seeking relief under the First Step Act are accordingly **DENIED AS MOOT.**

**I. BACKGROUND**

On September 18, 1998, Defendant pleaded guilty to three counts of an eighteen-count superseding indictment. *Plea Agreement*, ECF No. 385. Count Two charged Defendant with conspiracy to distribute cocaine base, or "crack," powder cocaine, and marijuana in violation of 21 U.S.C. § 846. *Superseding Indictment*, ECF No. 30, at 3. Count Thirteen charged Defendant with use of a firearm in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). *Id.* at 14. Third and finally, Count Eighteen charged Defendant with conspiracy to launder money in violation of 18 U.S.C. § 1956(h). *Id.* at 20–21. Over the course of the following

few months, Defendant filed a series of motions aimed at withdrawing his guilty plea, changing his representation, and otherwise lessening his sentencing exposure. *See, e.g.*, ECF Nos. 432, 433, 439, 440. Under 21 U.S.C. § 841(b)(1)(A)(iii) and an Information filed pursuant to 21 U.S.C. § 851, Defendant faced a statutory sentencing range of twenty years to life imprisonment on Count Two. He also faced a mandatory minimum sixty-month term of imprisonment under 18 U.S.C. § 924(c)(1), set to run consecutively to all other counts. With a criminal history category of VI and a total offense level of forty-four, Defendant faced a mandatory sentence of life imprisonment on Count Two alone under the then-mandatory Sentencing Guidelines.[1]

The Court denied Defendant's motion to withdraw his guilty plea, and conducted a sentencing on February 10, 1999. *Sentencing Tr.*, ECF No. 570. Twenty-two kilograms of crack were attributed to Defendant for the purposes of calculating his guideline range, though additional quantities of marijuana and powder cocaine were noted in the presentence report. *Id.* at 9–10; *Probation Mem.*, at 3. The Court concluded that Defendant was "the organizer, ringleader and in every sense the supervisor of [a drug distribution] conspiracy involving numerous individuals," responsible for importing a "huge quantity of cocaine and cocaine base" into the Southern District of West Virginia. *Sentencing Tr.*, at 26–27. The Court sentenced Defendant to a term of life imprisonment on Count Two, to be constructively followed by a term of sixty months imprisonment on the § 924(c) firearm charge contained in Count Thirteen.[2] Nevertheless, the Court observed that it likely would not have imposed a sentence of life imprisonment if the

---

[1] The Court did not undertake an analysis of Defendant's guideline range as to the § 924(c) firearm charge, as Defendant's total offense level was already above forty-three. *Sentencing Tr.*, at 19.

[2] The Court did not impose a term of imprisonment—or any other penalty—for the money laundering charges contained in Count Eighteen.

Guidelines had not mandated such a sentence. *Id.* at 28. Although rendered irrelevant by Defendant's lifetime term of imprisonment, the Court also sentenced Defendant to the ten-year statutory minimum term of supervised release. *Id.*

To date, the defendant has served approximately 257 months in prison. *Probation Mem.*, at 5. He completed the drug education program in 2002, and has satisfied his financial obligations.[3] *Id.* Somewhat remarkably, Defendant has accumulated no more than twelve sanctions over the course of his nearly twenty-two year term of incarceration. *Id.* Pursuant to the 2014 Drug Amendment, on October 30, 2015, the Court reduced Defendant's sentence on Count Two to 360 months imprisonment. *Id.* at 3. Even allowing for this reduction, however, Defendant's consecutive sixty-month sentence on Count Thirteen means he is not projected to be released until February 3, 2029. *Id.* at 5.

## II. LEGAL STANDARD

When a court imposes a sentence of imprisonment, it is considered the final judgment on the matter and the court, as a general prohibition, "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. §§ 3582(b) & 3582(c)(1)(B). However, a court can modify a sentence where it is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B).

The First Step Act of 2018 states, in relevant part, that a "court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Pub. L. No. 115–391, 132 Stat. 5194, § 404(b) (2018) (hereinafter "*The First Step Act*"). Section Two of the Fair

---

[3] Information related to Defendant's institutional adjustment—including his progress in educational courses and any sanctions—are drawn from the Bureau of Prison's SENTRY inmate management system.

Sentencing Act increased the quantity of cocaine base, or "crack," which triggers a mandatory minimum penalty. Pub. L. No. 111-220, §2, 124 Stat. 2372 (2010). Section Three eliminated the statutory minimum sentence for simple possession of crack. *Id.* at § 3.

To be eligible for a reduction in sentence, a defendant's sentence must not have been imposed or previously reduced under sections two or three of the Fair Sentencing Act of 2010.[4] *Id.* at § 404(c). Nor can a defendant have been previously denied a reduction under § 404 of the First Step Act. *Id.* While a defendant, the Government, or the Court can move for a reduced sentence, individuals are not entitled to a reduction as courts are not required to grant relief under § 404. *Id.* The First Step Act therefore represents a broad grant of authority to the federal courts.

The proper mechanism to seek relief under the First Step Act is 18 U.S.C. § 3582(c)(1)(b).[5] *United States v. Wirsing*, No. 19-6381, 2019 WL 6139017, at *8 (4th Cir. Nov. 20, 2019) (published). As such, the language of First Step Act controls the Court's ability to grant relief. *See Wright v. United States*, 393 F. Supp. 3d 432, 441 (E.D. Va. 2019). Under § 3582(c)(1)(B), a court can choose to conduct a simple mechanical reduction of a sentence based on a decreased exposure to statutory minimums and the correlating lower guideline range.

However, courts are not limited by § 3582(c)(1)(B). The First Step Act allows a court to "impose a reduced sentence" if an individual is eligible. *The First Step Act,* § 404(b). Reading the word "impose" consistently within the United States Code reveals that this equates to the

---

[4] The Fair Sentencing Act was enacted on August 3, 2010. Thus, the offending act must have been committed before this date.

[5] The United States Attorney's Office for the Southern District of West Virginia contends that the appropriate mechanism is 18 U.S.C. §3582(c)(2). While perhaps a colorable argument at the time this case was briefed, this interpretation has since been foreclosed by the Fourth Circuit Court of Appeals' decision in *United States v. Wirsing*, No. 19-6381, 2019 WL 6139017, at *8 (4th Cir. Nov. 20, 2019) (published).

announcement of a convicted person's sentence. *See* 18 U.S.C. §§ 3553(a) and 3582(a). Therefore, the First Step Act grants courts statutory authority to conduct a full resentencing, in addition to the discretion to decide when doing so is appropriate. *See Wright*, 393 F. Supp. 3d at 441. Whether or not a court decides to resentence a defendant, the language of the First Step Act does not require a hearing. *See id.* at 441. It is within the sound judgment of the Court to determine if an evidentiary or sentencing hearing is necessary to address the issues of a particular case.

When considering the statutory authority under the First Step Act, federal courts presume Congress acts in the context of relevant case law. *Abuelhawa v. United States*, 556 U.S. 816, 821 (2009) (citing *Williams v. Taylor*, 529 U.S. 362, 380–81, n.12 (2000). The Fair Sentencing Act, and its application through the First Step Act, is administered in light of the Supreme Court's decision in *United States v. Booker*, which held that mandatory guideline ranges are unconstitutional. 543 U.S. 220, 244–45 (2005). While *Booker* is not retroactively applied on a collateral attack, a court may now vary outside of the guideline range if it chooses to conduct a full resentencing. *United States v. Morris*, 429 F.3d 65, 72 (4th Cir. 2005). This includes variances based on policy disagreements with the Sentencing Guidelines. *See Kimbrough v. United States*, 552 U.S. 85 (2007).

Once a defendant is determined to be eligible, the Court must examine the statutory threshold to which that defendant pleaded and compare it to the alteration of the applicable law. The Court recognizes that the drug quantity listed in an indictment traditionally tracks the statutory minimums to ensure a defendant's plea or conviction complies with the Sixth Amendment. It is not illogical to speculate that had the Fair Sentencing Act been enacted at the time of a defendant's plea, the elevated statutory amounts would be listed in the indictment and may have had little to

no impact on the defendant's decision to plea. *See United States v. Blocker*, No. 4:07-36-RH, 2019 WL 2051957, at *4 (N.D. Fla. Apr. 25, 2019) (explaining "indictment-controls" versus "offense-controls" theories, and adopting the latter.). Yet to assume such a fact impermissibly alters the indictment and unconstitutionally abridges a defendant's Sixth Amendment rights. *See Alleyne v. United States*, 570 U.S. 99 (2013). In the context of First Step Act cases, this is true whether a court is conducting a full resentencing or not. *See*, *e.g.*, *United States v. Smith*, 379 F. Supp. 3d 543, 546–47 (W.D. Va. May 13, 2019). Due to the constitutional considerations, this Court—along with a number of others— adopts an "indictment-controls" interpretation of the First Step Act's impact on a defendant's plea. *United States v. Springs*, No. 3:05-CR-00042-FDW-1, 2019 WL 3310092 (W.D.N.C. July 23, 2019) (applying *Alleyne* to First Step Act cases) (listing cases).

### III. DISCUSSION

In reviewing the instant case, the Court considered the pleadings, the original presentence report, the judgment order and statement of reasons, any supplemental material from the defendant, including any correspondence, and the memorandum submitted by the Probation Office, which includes a summary of the defendant's institutional adjustments while in the custody of the Bureau of Prisons.

The Court will begin by observing that the Superseding Indictment does not attribute any particular quantity of crack, powder cocaine, or marijuana to Defendant. *Superseding Indictment*, at 3. Absent any such quantities, Defendant defaults to a Class C felony under 21 U.S.C. § 841(b)(1)(C). Pursuant to the 18 U.S.C. § 851 Information filed prior to Defendant's original sentencing, Defendant is exposed to a thirty-year statutory maximum and a six-year mandatory minimum term of supervised release. No mandatory minimum term of imprisonment applies under

21 U.S.C. § 841(b)(1)(C). Turning to the Sentencing Guidelines, the Court notes that Defendant's total offense level remains unaltered at forty-two from his 2015 sentence reduction. Nevertheless, the First Step Act authorizes the Court to sentence the defendant anew and enter a variance in cases it deems appropriate. This is such a case.

This Court's disagreement with Defendant's guideline range of imprisonment is as deep-seated as it is well-documented. At his original sentencing, the Court noted that it would be unlikely to sentence Defendant to a lifetime term of imprisonment "if [the] guidelines didn't require it." *Sentencing Tr.*, at 28. The Court observed that Defendant was "an intelligent person," "articulate," and someone who "could have been a success at anything [he] set out to do." *Id.* While allowing that "[a]n awful lot of lives [had] been either ruined or substantially impaired" because of Defendant's offense conduct, the Court considered it a tragedy to see "someone of [Defendant's] age and . . . potential spend the rest of their life in prison." *Id.* at 27–28. Notwithstanding these factors, the Court lacked the authority to vary from Defendant's lifetime term of imprisonment under the Sentencing Guidelines.

In imposing a new sentence today, the Court is no longer bound by these same constraints. As noted above, courts presume Congress acts in the context of relevant case law when it enacts a new statute. *Abuelhawa*, 556 U.S. at 821. Inasmuch as the First Step Act authorizes courts to impose new sentences on criminal defendants convicted of certain covered offenses, Congress presupposed that courts would act in the context of *United States v. Booker* and its core holding that mandatory guideline ranges are unconstitutional. 543 U.S. at 244–55. The Court is therefore free to vary downward from Defendant's revised guideline range of 360 months imprisonment to life, whether based on policy disagreements with the Sentencing Guidelines or for any other

§ 3553(a) factor. *See Kimbrough*, 552 U.S. at 110.

Here, the Court has considered Defendant's guideline range, the nature and circumstances of his offense, his history and characteristics, the need for deterrence, and other relevant factors laid out in 18 U.S.C. § 3553(a). It is this Court's regular practice to vary downward in cases where a defendant's guideline range forces his or her sentence towards the statutory maximum for a given offense. Here, the maximum penalty under 21 U.S.C. § 841(b)(1)(C) is thirty years imprisonment—and only then after accounting for Defendant's prior conviction. Defendant's current sentence of 360 months imprisonment therefore falls at the top of Defendant's statutory sentencing range. Together with the fact that his offenses of conviction were nonviolent, the Court finds that a slight downward variance from Defendant's current statutory maximum sentence is warranted. The Court therefore varies downward from a guideline range of 360 months to life imprisonment to 324 to 405 months imprisonment,[6] and imposes a bottom-end sentence of 324 months imprisonment on Count Two. As to Count Thirteen, the Court again imposes a term of imprisonment of sixty months, to run consecutively as to Count Two. Finally, the Court imposes a six-year term of supervised release on Count Two and a three-year term of supervised release as to Count Thirteen, set to run concurrently. The Court reaffirms all other aspects of its original sentence.

### IV. CONCLUSION

For the aforementioned reasons, the Court **GRANTS IN PART** Defendant's Motion for Reduction of Sentence under the First Step Act, ECF No. 1451, and **IMPOSES** a new sentence of

---

[6] A guideline range of 324 to 405 months imprisonment is the range immediately below 360 months to life imprisonment.

324 months imprisonment on Count Two and sixty months imprisonment on Count Thirteen, to run consecutively as to each other. The Court further **IMPOSES** a six-year term of supervised release on Count Two and a three-year term of supervised release on Count Thirteen, to run concurrently. The Court **ORDERS** any good time credit and the revised release date be calculated within **fourteen days** of the entry of this Memorandum Opinion and Order. To the extent Defendant requests "immediate release," or any other relief not granted by this new sentence, the Court **DENIES IN PART** his motion. Defendant's remaining motions addressing the First Step Act, ECF Nos. 1452, 1456, 1461, 1472, 1473, 1476, and 1479, are **DENIED AS MOOT**. Nothing in this Order alters any other aspect of the original judgment in this case.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: December 3, 2019

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE